JOHN H. NELDON

*v.*

JAMES ROOF et ux.

1. Where an answer is prayed under oath, and defendant denies a material allegation of the bill, complainant must plead further, or offer proof in behalf of the allegation.

2. An allegation that "defendant now brings the money into court" is equivalent to an allegation that defendant, either in person or by solicitor, walked into the court with his answer, and brought the money with him, and, with the answer, delivered it to the clerk.

3. In a bill to foreclose, where defendant has pleaded a tender into court of the amount due, and the case has been on the docket for several years after the pleadings were settled, the record of the moneys paid into court may be inspected to ascertain whether defendant's money was actually received and disposed of in accordance with the statute and the court rules.

4. Where the amount due is voluntarily paid into court by the owner of the equity of redemption in a bill to foreclose, and the payment itself and its purpose is pleaded in the answer, there need not be a special order of the court by the chancellor on notice to the complainant, rule No. 34 requiring the clerk to give immediate notice to the chancellor of all moneys paid into court.

Heard on bill and answer.

*Mr. Charles J. Roe*, for the complainant.

*Mr. Charles M. Woodruff*, for the defendants.

Neldon v. Roof.

PITNEY, V. C.

This is an ordinary bill to foreclose, by an assignee of the mortgage against the owner of the equity of redemption by conveyance from the mortgagor. The mortgage is dated November 24th, 1886, payable in one year, with interest from April 1st, 1886. Complainant's title as assignee accrued October 20th, 1887. Defendant became the purchaser of the equity of redemption about the 1st of March, 1888.

The bill was filed May 25th, 1888, and the answer on the 17th of July, 1888, since which and until the present year the cause has slept, and then was stirred by the defendant.

It is inferable from the statements of the bill and answer that the amount originally in controversy was $2.

The bill alleges that the complainant took an assignment of the mortgage by request of one Taylor, then the owner of the equity of redemption, and that a parol contract was then entered into between him and Taylor by which the payment of the mortgage was extended to the 1st day of April, 1888. Taylor, the party with whom the contract was alleged to be made, was not made a defendant. Answer is prayed for under oath, and the defendants by their answer deny the making of the contract with Taylor and all knowledge thereof on their part. This puts the allegation in issue, and no replication having been filed or proof offered in behalf of the allegation, it must, for present purposes, be held that there was no contract of extension. This renders it unnecessary to consider the question, well argued by defendants' counsel, whether such a contract, if proven, would have been binding on defendants, who purchased the premises without notice of it.

The bill alleges that the amount due is the principal sum of $600, and interest thereon from the date of the bond and mortgage, which would be from November 24th, 1886. But the bill also alleges that the bond which the mortgage was given to secure provided for the payment of interest from the 1st of April, 1886. This discrepancy is immaterial because defendant in his answer admits that when he purchased the premises about the 1st of March, 1888, the amount due was $600, with interest

39

from April 1st, 1886, amounting on the 10th of March, 1888, to the sum of $70, making $670 in all, and alleges that on the 9th of March, 1888, he offered to pay and tendered the same, to wit, the sum of $670, to the said complainant as and for the payment in full satisfaction of all moneys then due on the said mortgage, and the said complainant then and there wholly refused to receive the same. The answer further sets up that on the 5th of April, 1888, and before the commencement of the suit, the defendant, at the place of business of the complainant, again offered to pay and tendered to the complainant said sum of $670, being the said principal sum of said mortgage and all the interest due thereon to the said 9th day of March, 1888, being the date of the first tender, as and for the payment and full satisfaction of the said mortgage and all money, both principal and interest, due thereon, and the complainant again then and there wholly refused to receive the same. Then follows this allegation :

"And this defendant further says that ever since said 9th day of March, 1888, the time of the said offer to pay and tender, he has at all times been ready to pay the same, and is still ready so to do, and now brings the same into court."

The allegations of the answer in this respect are not put in issue, and must be taken to be true.

The points made against the defendant's position are :

*First.* That the tender was not good because not made by the original mortgagor and obligor.

I am unable to see any point in this. It was made by the owner of the equity of redemption, against whom this foreclosure is sought. It was made for the purpose of freeing and discharging his premises from the lien of the mortgage, and if properly followed up is a clear defence to this action. In cases where the party making the tender has, under the English practice, demanded a reconveyance, the question has sometimes arisen whether he was the party entitled to redeem and have the reconveyance. No such question arises here.

*Second.* That there is nothing by which it appears that the money has been actually paid into court.

Neldon *v.* Roof.

Admitting for present purposes that payment into court is a necessary part of defendant's case, the question is whether the allegation in the answer above set forth, which for present purposes must be taken to be absolutely true, is sufficient, viz., that "the defendant now brings the money into court." The fair construction of that language is that the defendant, either in person or by solicitor, walked into the court with his answer and brought the money with him and delivered it with the answer to the clerk.

The answer could not state that the money was received by the clerk and disposed of according to the rules and practice of the court. That this was done in the regular course of the business of the office seems to me should be presumed. But I think that in the present posture of the case we may and should resort to the record of the moneys paid into court, exhibited in the accounts of the clerk and court's depositary of its moneys, to ascertain whether in this case the moneys were actually received and disposed of in accordance with the statute (section 102 of the Chancery act) and the standing rules of the court (Nos. 33 and 34). Such inspection shows that the sum of $670 was actually received by the clerk from the defendant at the filing of the answer, paid in to the court's appointed depositary for moneys under the statute and credited to the proper account.

It thus appearing that the money was actually paid into court and there remains subject to the power and disposition of the court, the next objection made is that there could be no efficient payment of the money into court without a special order of the court by the chancellor, upon notice to the complainant. This contention raises an important question of practice which has been carefully considered.

In my judgment the object of all of the rules on this subject, as shown by the discussion in *National Docks and Junction Railway Co.* v. *United New Jersey Railroad Co., 7 Dick. Ch. Rep. 366, 555,* is, first, to make sure that the money is brought within the power and disposition of the court, and second, that the object and purpose of the payment be clearly defined. It was held by the court of appeals in that case that payment to

the clerk was in effect payment into court. In point of fact, in this court, by a long and well-settled practice, the clerk is the cashier of the court in that respect, as shown by the statute and rules above stated.

But it was also said by the court of appeals in that case that there should be, in addition to such simple payment, some other action taken by which the court itself, as distinguished from the clerk, shall be "apprised of and sanction" such payment, and that the uniform procedure was to obtain a rule or order of the court permitting its payment. But it was also said that each court had the power to establish its own rules and practice on this subject, with the result that a special rule or order in each case might be dispensed with.

In this court the practice has been not to require any order of leave or sanction to be signed by the chancellor, or rule to that effect to be entered in the minutes, where money is voluntarily paid into court by a party to a suit and the payment itself and its purpose is mentioned in a pleading—bill or answer—of the party paying. The pleading in such case stating the object and purpose of the payment gives notice of the payment to the opposite party, and then rule No. 34 requires that the clerk shall give immediate notice to the chancellor of all moneys paid into court. No other written rule on the subject has ever been found necessary, although the actual payment of money into court under the circumstances above stated are numerous and the aggregate amount large. This provision of rule No. 34 for the notice of payment to be given by the clerk to the chancellor, and the absence of any other rule on the subject, is a clear indication that the money may be effectually paid in and actually received by the clerk without any special order signed by the chancellor.

In bills of interpleader, accompanied by payment into court, in order to obtain an injunction, or in case of a bill for an injunction to stay execution on a judgment and a payment into court to satisfy the requirement of section 80 of the Chancery act, it has never, as I understand, been the practice to obtain an order by way of sanction giving the complainant leave to pay

the money into court. But the money is paid and received by the clerk as a matter of right and of course, and the order for the injunction merely recites such payment, the clerk's receipt for the money being exhibited to the judge or master granting the injunction; or, if payment has not been made before the application, the order states that an injunction shall issue upon condition that the complainant do pay into court &c. The same practice has prevailed in the case of a bill to redeem by mortgagee against mortgagor, or for specific performance by a vendee against vendor, where the bill alleges the tender of the amount due on the mortgage or contract, and also in the case in hand, where the defence is a tender of the amount.

In all these cases I am informed—and such was my own experience at the bar—that it has not been the practice for the party paying to obtain special leave of the chancellor to make such payment. It is made as a matter of course and so received by the clerk, and, in the regular routine of the business of the office, is credited to a particular account and then mingled with the other funds of the court by deposit in the duly-designated bank. It seems to me that this practice answers all the essential requisites of the canon laid down by the court of errors and appeals. It is difficult to perceive any reason why litigants, in the class of cases mentioned, should be burdened with the trouble and expense of a special order.

In this connection, I think it worth while to state that I have seen the brief of the counsel for the appellant in the case of *National Docks and Junction Railway Co.* v. *United New Jersey Railroad Co., 7 Dick. Ch. Rep. 555*, and he there cited numerous instances where moneys had been paid into this court and received by the clerk without any order of the court, in cases arising under different special statutes for condemnation of private property for public purposes. The case reported was one of payment of money into a common-law court having no fixed place, under authority of statute and rule, for the deposit of its moneys, and is, in that respect, in marked contrast with this court.

An examination of the English practice (*2 Dan. Ch. Pr. 1770*

*et seq.*) shows why the strict rule there prevailing (*2 Dan. Ch. Pr. 1786*) can have little or no application here. There, ever since the act of *12 Geo. I. ch. 32 (1725)*, establishing the office of accountant-general, moneys are not, in point of fact, paid into court, but are paid into the Bank of England to the credit of the accountant-general, and must be placed to a particular account designated by him. That officer, unlike our clerk, has nothing to do with the actual pleadings and proceedings in court, and acts, and must of necessity act, in the receipt of money, entirely by special directions of the court. Any other practice would lead to inextricable confusion.

In considering the force and bearing of the authorities on this question of tender and payment of money into court, it is necessary, in my judgment, to consider the particular circumstances of each case; for instance, whether the question is as to the effect of the tender in divesting and destroying a lien upon land or chattels, or whether the effect is to stop the running of interest merely, and whether the question arises at law or in equity. In the majority of the cases in equity, the question has arisen upon either the claim of absolute discharge of a lien, upon a bill to enjoin proceedings in ejectment (see *Lozier* ads. *Shields, 5 Vr. 496*, an action of ejectment); or in the matter of interest and costs on a bill to redeem, as in *Shields* v. *Lozier, 7 C. E. Gr. 488*; or, as in *National Docks and Junction Railway Co.* v. *United New Jersey Railroad Co., supra*, on a question of the actual divesting of title in condemnation proceedings; or in defence to a simple foreclosure suit, as in *Stockton* v. *Dundee Manufacturing Co., 7 C. E. Gr. 56*. In *Lozier* ads. *Shields, supra*, the court occupied itself wholly with the question of whether or not a payment or tender of the money due on a mortgage, after the day when, by its terms, it became due, had the effect in New Jersey of discharging the lien of the mortgage. In *National Docks and Junction Railway Co.* v. *United New Jersey Railroad Co., supra*, the real question was whether the money had been paid into court in such a manner as to be within the easy reach of the landowner.

With regard to the payment of the money on a bill to redeem,

Neldon v. Roof.

an examination of the authorities found in *3 Pow. Mort.* (*by Rand.*) *933 et seq.* and *2 Jones Mort.* § *890*, shows that formerly the English chancellors treated a mortgagor coming in to redeem after the day fixed for the payment of the mortgage had passed, as a suppliant to the court to be relieved of the effect of a forfeiture at law, and therefore properly subjected to equitable terms, and those were that he should not suddenly, in such case, pay off his mortgage, but should give at least six months' notice, and then, as reconveyances were required, the mortgagee was entitled to know that the person asking to redeem was the proper party to whom a reconveyance should be made; and oftentimes the mortgagee was in possession and bound to account for the rents and profits, so that a variety of matters was required to be settled before the amount to be paid could be fixed and the reconveyance made. In all this the chancellors acted upon the idea that they were granting a mere favor to the complainant who asked to redeem, and imposed strict and somewhat severe terms upon him. These, however, as the authorities show, have been much ameliorated in later days, in accordance with advanced notions of justice and equity.

In case of tender and payment of money to divest title on condemnation proceedings, constitutional rights are met, and the courts are well justified in requiring that the amount found by the commissioners, or the jury, as the case may be, should be put fully and completely within the control of the landowner before it should be held that compensation has been made to him and the title passed to the condemning corporation.

In a simple case of foreclosure and tender and payment into court by the defendant, it seems to me that the considerations above mentioned do not apply. The question—where, as here, there is no cross-bill asking for the delivery and cancellation of the mortgage, and that question is not before the court—is not whether the lien of the mortgage shall be divested and the debt considered as paid, but simply whether or not the complainant when he came into court had just cause and reason so to do, for, in order to entitle him to come into a court of equity to ask for foreclosure, there must have been a substantial failure of the

Neldon v. Roof.

owner of the equity of redemption to pay the debt. The statement found in bills to foreclose that complainant had demanded payment which was refused, is not, in my judgment, a mere meaningless form. And if, in good faith, the money has been tendered and refused, and the defendant has not been put in default by a subsequent demand of payment, and the amount tendered was, in point of fact, sufficient, and the tender was made at a time and place when and where the complainant should have received it, and no reasonable excuse is made for his not receiving it, it does seem to me that in such a case the defence of tender is a meritorious one, and that a court of equity should not apply to it the strict rules that have been applied in other cases. And, speaking for myself as a judge of a court of equity, I wish to protest against the application in this court of those strict rules of the common law on this subject which drew from Lord Tenterden the remark that "the plea of tender is, in practice, so seldom successful, that I am always sorry to see a plea of tender on the record, because I know from experience that it is very seldom made out." It seems to me that the severe rule adopted by the English common-law courts on this subject, up to within a comparatively recent period, was a blemish—small, indeed, but quite distinct—upon the symmetry of the English common-law practice.

My conclusion on the case here made is that the complainant had no ground of equitable action when he filed his bill, and that it must be dismissed, with costs, but without prejudice to his right to apply to the court to have the money in court paid out to him.

Since writing the foregoing my attention has been called to, and I have read, the opinion of Vice-Chancellor Grey in *Whittaker* v. *Belvidere Roller Mill Co.*, filed since this cause was argued. The learned vice-chancellor there dealt with the case of a tender to the complainant, with the demand of an assignment of the bond held by complainant, made after suit brought, and payment into court without any order of the court or notice to the complainant, and unaccompanied by any pleading. What the allegations of the answer in that behalf were does not appear.

Neldon *v.* Roof.

In the meantime other persons holding other bonds secured by the same mortgage had been made parties complainant. The original complainant waived the defects, if any, in the tender, by asking—but for some undisclosed reason without success—to have the money paid out to her, and the question seems to have been whether the tender and payment into court terminated the suit so that the new parties complainant could not proceed with it. The learned vice-chancellor, in speaking of the effect of the attempted tender and payment into court, merely reiterated the rule laid down in *National Docks and Junction Railway Co.* v. *United New Jersey Railroad Co., supra,* and held that the tender and payment into court did not affect the proceeding nor stop the interest running to the original complainant.

The case of a tender after suit brought and payment into court, as shown by *Wright* v. *Behrens, 10 Vr. 413,* and *Levan* v. *Sternfeld, 26 Vr. 41,* stands on an entirely different footing from that of a tender before suit brought. By the well-settled practice in the law courts in such a case there must be a special order of the court made. Besides, in *Whittaker* v. *Belvidere Roller Mill Co.* there was no unconditional tender, but an offer of payment with the money produced, accompanied with the demand of an assignment, which the vice-chancellor held, under the circumstances, was inefficient because not made to the proper party, or by a party showing that he had any equity to the assignment. It was eminently a case where the remedy of the party making the tender was to apply to the court, showing his right to subrogation, and ask for an order that the complainant accept the amount due her, with costs, and assign the claim to him, or that he be subrogated to her rights. I see nothing in the case to vary the result I have above stated.